# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAN E. MILICI,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

________________________________________/

CASE NO. 1:09-cv-01099-SMS

ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS

Plaintiff Dan E. Milici, by his attorneys, Binder and Binder, L.L.C., seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following review of the record as a whole and applicable law, this Court affirms the agency's determination to deny benefits to Plaintiff for failure to prove disability existed before the expiration of insurance coverage.

## I. Administrative Record

### A. Procedural History

On February 9, 2006, Plaintiff filed for disability insurance benefits, alleging disability beginning June 1, 1999, attributable to chronic pancreatitis and hyperlipedemia. AR 13. His

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 6 and 7).

claim was initially denied on December 5, 2006, and upon reconsideration, on March 12, 2007. AR 13. On May 15, 2007, Plaintiff filed a timely request for a hearing. AR 13. Plaintiff appeared and testified at a hearing on December 15, 2008. AR 22-55. On December 30, 2008, Administrative Law Judge Sharon L. Madsen denied Plaintiff's application. AR 13-21. The Appeals Council denied review on April 22, 2009. AR 1-3. On June 22, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

### B. Factual Background[2]

Plaintiff Dan Milici (born October 30, 1949) graduated from vocational nursing school in 1971or 1972. AR 28, 122. He worked as a licensed practical nurse ("LPN") for Goleta Valley Community Hospital in Goleta, California until June 1997, when he decided to leave the profession. AR 30. He then lived on his savings and explored the possibility of working "in the trades," as his friends did. AR 30.

As an LPN, Plaintiff provided patient care, administered medications, took specimens, changed dressings, changed and made beds, assisted in emergencies and in surgery, prepared patients for surgery, and transported them to the operating room. AR 117. He used machines, tools, and equipment; applied technical knowledge and skill; and wrote, completed reports, and performed similar duties. AR 117. He typically walked, stood, stooped, knelt, crouched, reached, and handled large, heavy objects seven hours each day. AR 117. In the remaining hour, he sat and wrote, typed, or handled small objects. AR 117. He frequently lifted 150 pounds and lifted as much as 422 pounds. AR 117. He supervised four people. AR 117.

**Plaintiff's testimony.** Plaintiff testified that, despite his illness, he takes care of his own personal needs. AR 28. He does household chores, cooking, and shopping, but hires help to maintain the yard. AR 28-29. He socializes with friends, doing "cowboy activities." AR 29.

Plaintiff experiences chronic pain. AR 32. Although he tries to tolerate his pain at home, he sometimes requires hospitalization for severe pain. AR 32. His pancreatitis causes pseudo

---

[2] Because the agency denied Plaintiff's application for benefits based on his failure to establish that he was disabled before the last date on which he was insured, December 31, 2000, this section sets forth only that information relevant to the time period August 27, 1998, through December 31, 2000.

asthma with attendant shortness of breath. AR 32-33. He is prone to respiratory infections caused by bad air days and very low humidity. AR 33. The high levels of proteolytic enzymes that are administered during acute pancreatic attacks have ruined his teeth. AR 33. His spleen ruptured and was removed during a pancreatitis attack in June 2003. AR 33.

At the time of the administrative hearing, Plaintiff's medications included Tricor (for triglycerides and lipids); Protonix (for gastroesophageal reflux disease); Robaxin (a muscle relaxer for muscle cramps and restless leg syndrome); Vicodin (a pain reliever), as needed; and the fentanyl (pain reliever) patch. AR 30-31. He observes a low-fat, low-cholesterol diet. AR 31.

On a good day, Plaintiff wakes up, makes his wife's lunch, and sees her off to work. AR 29. He does the morning household chores, waters the trees, if necessary, and feeds the horses. AR 29. He may putter about the yard, fixing fences or doing work that needs to be done for the horses. AR 29. On a bad day, Plaintiff lies in bed with a pillow at his side and spends a lot of time in the bathroom. AR 29. He described pancreatitis as "the most painful chronic nonfatal chronic disease there is," likening the pain to being stabbed with a sword. AR 37.

Plaintiff testified that he routinely experiences nausea, vomiting, and diarrhea. AR 38. He may spend as many as six hours a day in the bathroom. AR 38. He is generally fatigued since he has difficulty eating. AR 39. As a result, he cannot consistently work five-day, eight hour days. AR 41. In addition, many employers will not hire him because he takes narcotic pain relievers as needed. AR 41.

Plaintiff testified that his acute attacks are more controlled now than in the period from August 1998 to December 30, 2000, because his medication regime has become established.[3] AR 36. In the initial three years after his diagnosis he was "down most of the time." AR 37.

**Testimony of Plaintiff's wife.** Sandra Schaffer, an emergency room physician, has lived with Plaintiff since 1997. AR 42. They married in 2005. AR 42.

Schaffer testified that Plaintiff was first admitted to Cottage Hospital with pulmonary edema in August 1998. AR 42. Before his hospitalization, Schaffer had attempted to treat him at

[3] Interestingly, the ALJ asked Plaintiff no specific questions relating to the relevant time period of August 1998 through December 2000. Plaintiff's attorney asked only four questions regarding that time period. AR 36-37.

home since the couple had limited money. AR 43. Plaintiff spent about two weeks in the intensive care unit before being released to regular hospital care. AR 43. When he returned home, he was very weak. AR 43. Although Plaintiff's condition is now "a chronic, steady state of inflammation," in the early years he was "like a yo-yo," alternating between getting better and experiencing severe attacks several times a year and less serious attacks monthly. AR 43-44. The couple attempted to avoid his hospitalization since they were uninsured and the hospitalizations cost thousands of dollars. AR 44.

Plaintiff's pain was different in the early years than that he now experiences. Schaeffer explained that, at first, the pain related primarily to the acute pancreatitis attacks. AR 45. As the disease has progressed the pain relates more to continuing formation of scar tissue, which causes more chronic pain. AR 45. Plaintiff also experiences the pain typical to diarrhea and upper gastrointestinal distress (nausea and vomiting). AR 46.

**Medical records and opinions.** Plaintiff was initially hospitalized for pancreatitis from August 24 through 31, 1998. AR 453. X-rays taken on August 25 revealed left pleural effusions; those taken on August 26 showed bilateral pulmonary edema. AR 435-437, 439, 440. Although Plaintiff's condition had improved, x-rays continued to show pulmonary edema on August 27. AR 434. An abdominal ultrasound administered on August 27 revealed that Plaintiff had an enlarged liver and moderately enlarged spleen, but no liver or spleen lesions. AR 433. His gallbladder, bile duct, and kidneys were unremarkable or normal. AR 533. Plaintiff had some ascites (fluid in abdominal cavity). AR 433. Lab results appear at AR 428-432, 439, 441-455.

Plaintiff was examined by his internist, Stephen K. Lemon, M.D., on September 4, 1998. AR 427. Lemon noted that Plaintiff had initially been diagnosed as having pancreatitis on August 22, 1998, and tried home therapy until he became sicker and went to the hospital on August 24. AR 427. Lemon reported that Plaintiff was gradually increasing his physical activity since returning home but was experiencing abdominal discomfort if he over-exerted. AR 427. His respiratory difficulties had resolved. AR 427. Lemon described Plaintiff as "slowly recovering" from hyperlipidemic pancreatitis. AR 427.

///

Plaintiff was examined by his internist, Brent J. Kovacs, M.D., on September 10, 1998. AR 426. Plaintiff continued to have abdominal pain and was taking two Vicodin tablets every four to six hours. AR 426. Kovacs switched Plaintiff's pain medication from Vicodin to Darvocet at Plaintiff's request. AR 426. Plaintiff denied fevers, chills, nausea, or vomiting. AR 426. Kovacs noted, "Overall, he looks much better than when he was discharged from the hospital." AR 426. The doctor's impression was:

> Pancreatitis secondary to Hypertriglyceridemia. He is continuing to improve, and looks better overall, but likely has developed at least 1, if not 2, pseudocysts. This may just represent inflammatory mass in the [abdomen], but it does appear to extend extremely low down on the [right], and therefore likely represents 1-2 or more pseudocysts.

AR 426.

Plaintiff was re-admitted to the hospital for pain control on September 13, 1998. AR 422-425. His discharge summary noted that Plaintiff began experiencing increased abdominal pain and nausea on September 10, 1998. AR 418-420, 422. The Darvocet did not control the pain as effectively as the Vicodin did. AR 418-420, 422. In addition, Plaintiff had increased his activity level. AR 422. Plaintiff was given a morphine pump to get his pain under control. AR 422. A CAT scan of his abdomen showed fluid and inflammation, but no pseudocysts. AR 415-417, 422.

Plaintiff saw Lemon for a follow-up appointment on September 29, 1998, about two weeks after his two-day hospitalization. AR 411. Although Plaintiff continued to experience abdominal discomfort, aggravated by stretching, turning, or bending, he was using pain medication only once or twice a day. AR 411. He retained some parapancreatic fluid but had no specific area of pseudocyst. AR 411. His bowel movements had returned to "near normal." AR 411. Lemon noted "[s]lowly resolving pancreatitis." AR 411.

At the next routine follow-up appointment on October 26, 1998, Lemon noted, "He has had continuing [abdominal] discomfort, but does notice that the episodes of worsening pain are fewer and farther between. No nausea, no vomiting." AR 410. Lemon diagnosed "[s]evere pancreatitis with slow resolution." AR 410.

Plaintiff again saw Lemon on January 13, 1999, for left upper quadrant abdominal pain experienced after straining his abdomen while changing a tire. AR 345. Lemon noted that

Plaintiff "had been doing well" since his hospitalizations in 1998. AR 345. Plaintiff had tenderness in his superficial abdominal muscles. AR 345. Lemon found no active signs of pancreatitis and opined that Plaintiff might have pulled some adhesions or strained his abdominal muscles. AR 345.

The record includes no evidence of medical treatment from January 13, 1999 until December 31, 2000, when his insurance coverage expired.

**Vocational expert testimony.** Kenneth Ferra[4] testified as a vocational expert that Plaintiff's prior work as a licensed practical nurse is classified as medium and skilled (SVP 6). AR 49, 101. Plaintiff's position may have been performed at a very heavy level of exertion. AR 49-50. Plaintiff's skills were transferable to nursing positions with medium or very heavy levels of exertion. AR 50.

The first hypothetical assumed a person of the same age, education, and work experience, able to lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk six hours a day; and able to occasionally push, pull, crouch, or crawl. AR 50. Such a person could not perform the work of a licensed practical nurse. AR 51.

The second hypothetical assumed the person could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk six [hours a day]; could occasionally push, pull, crouch, or crawl; and would require access to the rest room as needed. AR 51. Such a person could perform unskilled work such as cashier II, cleaner, or sales attendant, all positions with numerous jobs in California. AR 51.

The third hypothetical assumed the person could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk six [hours a day]; could occasionally push, pull, crouch, or crawl; would require access to the rest room as needed; and would miss four or five work days each month. AR 51. Ferra opined that no such jobs are available. AR 51.

Using the facts of the third hypothetical, but assuming no missed days but frequent interference with concentration, persistence, or pace due to pain or fatigue, no jobs are available.

[4] The hearing transcript identifies the vocational expert as "Mr. Perrin." AR 49.

AR 52. Using the facts of the third hypothetical, but assuming no missed days but a need for a one to two hour break following lunch, no jobs are available. AR 52. Using the facts of the third hypothetical, but assuming only two or three missed days of work each month, no jobs are available. AR 52.

## II. Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

Plaintiff had acquired sufficient quarters of coverage to be insured through December 31, 2000. AR 13. Accordingly, to be eligible for a period of disability and disability benefits, Plaintiff had to establish his disability on or before December 31, 2000.[5] AR 13.

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

---

[5] Plaintiff did not apply for supplemental security income ("SSI").

Step five: Does the claimant have the residual functional capacity to perform any other work? Is do, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 27, 1998. AR 15. Through December 31, 2000, the last date on which he was insured, Plaintiff had two severe impairments: recurrent pancreatitis and hyperlipedemia. AR 15. Through the last date of insurance, his impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P. Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). AR 15. The ALJ found that, through December 31, 2000, Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; to stand, walk, and sit for six hours in an eight-hour day; and to crouch, crawl, push, and pull occasionally. AR 16. He required access to the restroom as needed. AR 16. Through December 31, 2000, Plaintiff was unable to perform his prior work as a licensed practical nurse. AR 20. Application of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P. Appendix 2, supported a finding that Plaintiff was not disabled whether or not his prior job skills were transferable. AR 20. Through December 31, 2000, a significant number of jobs that Plaintiff could have performed existed in the national economy. AR 20. Accordingly, the ALJ concluded that Plaintiff was not disabled from the onset date of August 27, 1998, through December 31, 2000, his last day of insurance coverage. AR 21.

## III. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

In this case, Plaintiff failed to carry his burden to prove that he was disabled before December 31, 2000, requiring the ALJ to find against him. The key issue in this case was whether Plaintiff had been disabled before his insurance coverage ended on December 31, 2000. Given the central importance of the timing of Plaintiff's disability in the agency's decision, this Court was surprised at how little evidence and testimony presented below addressed Plaintiff's condition in the time period running from the onset of Plaintiff's pancreatitis to the end of his period of insurance eligibility.

Plaintiff provided extensive information regarding his limitations at the time of his application and the administrative hearing in 2006, but almost nothing regarding his abilities or disabilities from August 1998 through December 2000. The fact finder's task was complicated by Plaintiff's having left his former job over a year before he was diagnosed with pancreatitis since there is no record whatsoever of Plaintiff's activities during that period beyond the mere fact of his acute illness in 1998 and his straining his abdominal muscles trying to help change a tire in early 1999. (At the time of Plaintiff's January 1999 injury, the medical report noted no evidence of active pancreatitis. AR 345.) In addition, there is no record of Plaintiff receiving any medical treatment for his condition from the January 1999 abdominal strain through December 31, 2000.

Plaintiff's appeal to this court never addresses this issue even though the absence of proofs for the relevant period is the primary reason that he did not prove his disability claim below. Instead, Plaintiff contends that the ALJ erred in (1) rejecting the opinions of Plaintiff's treating physician Kovacs and consultative internist Aijian, and (2) finding that Plaintiff's and Schaeffer's testimony lacked credibility. Defendant responds that the ALJ's determinations were supported by substantial evidence.

The scope of review requires this Court to consider the record as a whole, examining both the evidence supporting the ALJ's decision and the evidence that does not. Having done so, this Court concludes that substantial evidence supported the ALJ's findings.

**A. The Physicians' Opinions**

Both Kovac's and Aijian's opinions were prepared in contemplation of Plaintiff's 2006 disability application and reflected Plaintiff's condition at that time. The ALJ gave little weight to Kovac's opinion since it was not supported by medical evidence prior to December 31, 2000. AR 17. On February 27, 2006, Kovacs provided a letter to Plaintiff's attorney:

> Dan Milici has been a patient in my practice since he was admitted to the hospital with severe acute pancreatitis in August, 1998. This diagnosis was confirmed with a combination of history and physical examination, elevated serum pancreatic enzymes and CT scans. The cause of his pancreatitis is hypertriglyceridemia exacerbated by alcohol consumption. He has been hospitalized several times now for relapsing pancreatitis, confirmed by history and physical examination as well as recurrently elevated serum pancreatic enzymes. The patient has chronic daily pain with periods of more intense pain lasting several days at a time. He has had relapsing pancreatitis despite discontinuing all alcohol.
>
> I have seen him intermittently over these past eight years. He is currently taking TriCor, Nexium, aspirin and pain medication, all of which are prescribed by his primary care physician. Unfortunately, he continues to have pain most days and exacerbations on an unpredictable basis. His pain clearly limits his ability to perform steady work including standing, sitting, lifting and concentrating for more than an hour at a time. I believe he has been disabled since his initial hospital admission in August, 1998 and that he will remain disabled for at least the next 12 months, likely lifelong given the fact that he still has this condition nearly eight years after initial diagnosis without significant improvement.
>
> AR 319.

In resolving this issue, it is important to keep in mind that whether Plaintiff had a serious severe impairment is not at issue. Although a substantial portion of Kovac's letter seeks to establish the validity of Plaintiff's diagnosis, it also is not at issue. All concerned agree that Plaintiff's pancreatitis and hyperlipedemia are severe impairments. Finally, whether Plaintiff was disabled when he applied for disability benefits in 2006, as the balance of Kovac's letter discusses, is irrelevant. Because Plaintiff's disability insurance coverage ended on December 31, 2000, Kovac's letter had to address Plaintiff's condition before that date. It did not do so.

Dr. Paul Aijian performed an internal medicine consultative examination of Plaintiff in October 2006. AR 353-354, 406-407. Plaintiff was seeking a letter stating that he was "disabled."

AR 406, 407. Aijian noted that Plaintiff's abdomen was "soft moderate diffusely tender, no masses or hepatosplenomagaly," and that Plaintiff suffered "chronic diarrhea." AR 354, 407. Although Aijian apparently conducted a single medical examination, a large portion of his report apparently was based on Plaintiff's own reports of his medical history, such as Aijian's statement that Plaintiff has had "chronic pancreatitis for years, at times so severe that he was hospitalized with near death [*sic*] and pulmonary edema." AR 353. Aijian's first conclusion, addressing Plaintiff's pancreatitis, also reflects medical history reported to Aijian rather than the results of the medical examination. AR 354. Except for noting the onset of Plaintiff's pancreatitis in 1998, Aijian's opinion did not address the critical disability period of August 1998 to December 2000 at all. The ALJ correctly rejected Aijian's opinion as unsupported by objective evidence, stating, "Current symptoms are not sufficient to establish that disability existed eight years earlier without objective evidence to support their severity prior to December 31, 2000." AR 18.

Finally, both physicians opined that Plaintiff is disabled. Kovac stated that Plaintiff is disabled and has been disabled since August 1998. Aijian opined that Plaintiff's pancreatitis had "gone on since 1998 and is not likely to ever resolve to the level that he will be able to be employed." AR 354. An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); Social Security Ruling 96-5p. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ appropriately rejected both physicians' opinions.

**B. Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in concluding that his testimony was not credible. He argues that the ALJ (2) emphasized his testimony of his activities on good days and disregarded his testimony of the disabling pain that he experiences on bad days; (2) wrongly concluded that Plaintiff had control over the frequency of his flare-ups through control of what he ate and drank; and (3) erred in concluding that his medical care had not been routine and that no record supporting Plaintiff's claims of chronic diarrhea and nausea had been presented. Once again,

Plaintiff focuses on his current physical state and disregards his burden to prove at least twelve-months of disability before his insurance coverage expired on December 31. 200.

The ALJ found that Plaintiff's testimony was not substantiated by medical records or other objective evidence pertaining to the relevant time period. She addressed Plaintiff's testimony in three paragraphs:

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> The claimant testified at the hearing to severe symptoms and limitations, but his testimony was not persuasive or convincing of disability. He stated he is able to take care of his personal needs, do household chores, cook, shop, and do yard work with help. He said on a good day he gets his wife's lunch ready, gets her off to work, feeds her horses, and waters trees. These activities are inconsistent with an individual with disabling pain. The claimant testified that on a bad day he lies in bed with a pillow on his side. He stated that he had episodes of pancreatitis four or five days a week, or once a month or less, and that it depends on what he does and what he eats. I note that this testimony indicates that the frequency of the claimant's flare-ups seems to be in his control.
>
> The claimant testified that on good days he can lift 50 pounds and has no problems sitting or standing, but has some left flank pain. He said he will have pancreatic pain if he walks too far in the wrong shoes. He said on a bad day he can lift five pounds, sit 30 minutes, stand 10 to 15 minutes, and walk 10 to 20 feet. The claimant testified that he last went to the hospital in November 2008 for pain control and was comfortable within 30 to 60 minutes. He said he has lingering pain after an episode, depending on the medication he receives on discharge. He said his pancreatitis has become static. He stated he was down most of the time for a three-year period. **However, the medical record does not indicate that the claimant was "down" for any consecutive 12-month period that began prior to the date last insured.** The claimant testified that he has nausea, vomiting, and diarrhea on a routine basis, and can be in the bathroom as much as six hours a day. He stated he was nauseated for the last seven days, and in the past he was nauseated after every meal. **I note, again, that the claimant did not receive routine medical care prior to the date last insured, so there is no record of chronic nausea and diarrhea to support his testimony.**
>
> AR 18-19 (*emphasis added*).

Plaintiff's only testimony regarding his condition between August 1998 and December 2000 was elicited by his attorney and is reported at AR 36-37. Plaintiff testified that (1) his current symptoms are the same as his symptoms during the period in which he had insurance coverage

except that they are now more controlled; (2) during the relevant period he could have a recurrence of symptoms "as often as once a month or . . .as often as five times a week"; (3) "[q]uite frequently I was down for about, there was a three-year period that I was down most of the time; and (4) after his release from the hospital after his initial attack, his condition flared up and he was readmitted within three days. AR 36-37. Plaintiff then proceeded to testify about his present symptoms. AR 37-41.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's pain testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039, *citing Smolen v.*

*Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.
>
> *Orn*, 495 F.3d at 635.

For example, in addition to finding Mrs. Thomas's medical records did not support the level of pain and the limitations to which she testified, the ALJ in *Thomas* found that Thomas had an "extremely poor work history," "little propensity to work in her lifetime," and a sporadic work history periodically interrupted by years of unemployment. *Id.* Thomas, who had worked as a bartender, house cleaner and concession worker, remained able to perform her own housework, including cooking, laundry, washing dishes, and shopping. *Id.* Her testimony about her drug and alcohol usage was internally inconsistent and lacked candor. *Id.* And, most compelling, Thomas impeded testing during two physical capacity evaluations, demonstrating "self-limiting behavior" that embodied inconsistent and minimal effort. *Id.*

Here, the ALJ correctly discounted Plaintiff's testimony for its lack of support in his medical records for the time period from August 1998 through December 2000. In addition, she noted that, in 2005, before filing an application for disability benefits, Plaintiff told Dr. Navid Madani "that his initial attacks of pancreatitis occurred every two years, but became milder and

more frequent," and that in between attacks, he was either asymptomatic or experienced very mild pains, "like hunger pains." AR 19. Finding that Plaintiff himself had made statements outside the hearing that were consistent with his medical records, the ALJ assigned that evidence great weight. AR 19. The ALJ concluded:

> I find it quite unusual and quite inconsistent with disability that the claimant waited almost eight years after the onset of his symptoms to file for benefits. Because the Plaintiff's daily activities are inconsistent with intractable pain, and because of the lack of objective evidence to support the claimant's allegations, I give little weight to his subjective complaints as they pertain to the period prior to December 2000.
>
> AR 20.

The ALJ did not err in rejecting Plaintiff's testimony regarding his physical condition and inability to work prior to December 2000.

**C. <u>Schaffer's Credibility</u>**

Finally, Plaintiff contends that the ALJ erred in rejecting Schaffer's testimony about Plaintiff's condition following his hospitalizations in August and September 1998. Plaintiff contends that the ALJ herself elicited Schaffer's testimony that Plaintiff's condition was like a "yo-yo," with asymptomatic periods followed by attacks of acute pancreatitis. The ALJ gave some weight to Schaffer's testimony regarding Plaintiff's symptoms but found that Schaffer did not provide information establishing that Plaintiff had the symptoms and was disabled before December 2000. AR 19.

This Court will not second-guess the ALJ's assessment of Schaffer's credibility. That Plaintiff required hospitalization and surgery, followed by a period of weakness and necessary recovery is insufficient to establish disability. Such is the course followed by many thousands of American workers each year who proceed to recover from their acute illness and return to work. Nor does Schaffer's opinion that Plaintiff's current "chronic, steady state of inflammation," in contrast to his alternating between getting better and experiencing a few serious attacks annually and less serious attacks monthly in the early years of his illness provide any real insight into whether Plaintiff was or was not disabled before December 2000. AR 43-44.

///

Objective evidence is inconsistent with Schaffer's testimony. No records were presented of any medical treatment after the January 1999 injury and before December 31, 2000. In fact, Plaintiff was well until his enjoyment of "a number of alcohol beverages" after the solstice parade led to an acute attack in July 2001. AR 306. His physicians' report noted that "Plaintiff is well aware that he can die from his pancreatitis and he is strongly advised not to partake in [deleterious] actions affecting his pancreas and quit eating his fatty food, alcohol consumption. He has been well up until this time." AR 306.

The ALJ did not err in rejecting Schaffer's testimony.

## IV. Conclusion and Order

Plaintiff failed to carry his burden of proving that he was disabled prior to the expiration of his insurance coverage on December 31, 2000. The ALJ appropriately refused to consider evidence of Plaintiff's condition in 2006 to be dispositive of his condition between August 1998 and December 2000. Accordingly, this Court hereby AFFIRMS the agency's determination that Plaintiff was not disabled before the expiration of his disability insurance benefits.

IT IS SO ORDERED.

**Dated: September 24, 2010**

**/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE